THOMAS C. STEWART, as Administrator, etc., of ANDREW C. STEWART, Deceased, Appellant, *v.* JOHN W. FERGUSON, Respondent.

*Negligence — a master is liable for an injury to his servant occasioned by a defective scaffold — Labor Law, 1897, chapter 415, § 18 — violation of a statute or municipal ordinance — contributory negligence.*

Prior to the enactment of the Labor Law (Chap. 415 of the Laws of 1897) the rule was well established that a scaffold erected for workmen is not a place in which their work is to be done, within the meaning of the rule requiring the master to furnish a suitable place in which to do his work, but is an appliance or instrumentality by means of which the work is to be done, and that, if the master furnishes proper material for the scaffold, he is not liable to his workman for the negligent act of one of his employees in building it; but since the enactment of section 18 of that law, the scaffold is regarded as a place furnished by the master upon which the servant is to work, and the duty has devolved upon the master not to permit that place to be unsafe, unsuitable or improper. A servant of the master, in building the scaffold, acts as the master himself.

An employee required to use the scaffold is not called upon to inspect it in order to ascertain if it is safe; he has a right to assume that the master has performed his duty in that regard.

The violation of a statute or of a municipal ordinance which causes an injury to any person is *prima facie* evidence of negligence on the part of the law breaker, which affords sufficient reason for charging him with liability for an accident; but such liability on his part exists only where the violation of the law can be said to have been in some way, or to some extent, the cause of the injury; and where an accident occurs through the breaking of a scaffold, by reason of which an employee falls through five floors and is killed, the fact that the master has not complied with section 20 of the Labor Law, requiring that the floors of the

building shall be filled in to within three tiers of beams, does not constitute negligence which renders him liable for the accident.

*Semble,* that in such case, as the fact that the floors had not been filled in as the law required was perfectly apparent to the employee who was killed, he, by consenting to work upon the scaffold above the place where these openings were, assumed the risk and was guilty of contributory negligence.

APPEAL by the plaintiff, Thomas C. Stewart, as administrator, etc., of Andrew C. Stewart, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of June, 1898, upon the dismissal of his complaint by direction of the court after a trial at the New York Trial Term.

*Edward P. Lyon,* for the appellant.

*John Vernou Bouvier, Jr.,* for the respondent.

RUMSEY, J.:

The action was brought to recover damages for alleged negligence of the defendant which caused the death of the plaintiff's intestate. The defendant was a contractor engaged in the construction of a large building at Hunter's Point, upon which the plaintiff's intestate was working as a bricklayer. The building had progressed until the bricklayers were at work upon the wall between the sixth and seventh floors. A scaffold had been built at that point upon which they were standing. While Stewart was engaged in his work there, the scaffold gave way and he fell through five floors and was killed. The complaint was dismissed at the close of the plaintiff's case, and from the judgment entered upon that dismissal this appeal is taken. It cannot be disputed that the jury would have been bound to find upon the evidence that the scaffold upon which Stewart stood at the time of the accident was improperly constructed, and that its fall was the direct result of that improper and unsafe construction. It is claimed by the defendant that the construction of the scaffold was a detail of the work, for the performance of which he had furnished sufficient proper material, and that it had been intrusted to men who were competent for that purpose. He insists that these men were co-servants of Stewart, engaged upon the same work, and if they failed either to use proper material which had been furnished, or to put it together in the proper way, so that the

scaffold was safe to stand upon, their failure was the negligence of a co-employee of Stewart's, for which the defendant was not responsible. He invokes the rule laid down by the Court of Appeals in *Butler* v. *Townsend* (126 N. Y. 105), and by this court in the case of *McCone* v. *Gallagher* (16 App. Div. 272). The learned court at the Trial Term held that the facts proved brought the case within that of *McCone* v. *Gallagher* (*supra*), and applying the rule laid down in that case, dismissed the complaint.

It appears that one Montague was the superintendent of the defendant in charge of the construction of the building, and had the control and management of it. It became necessary on a certain day to build this scaffold for the use of the bricklayers and three men were set to work upon it. At the place where the scaffold subsequently fell, it was supported by two uprights, one placed upon the other. From the upper one to the wall was placed what was called a putlock, nailed to the upright at one end, and at the other end inserted in the wall. To make the scaffold safe it was necessary that the upright which supported the inner end of the putlock should be strongly braced. It appeared from the testimony that three men were at work upon the scaffold in this place; that the upright had been erected and the putlock nailed to it and inserted in the wall, but no braces had been placed to steady the upright. At that stage of the work the superintendent called away two of the men who were at work, leaving a single man, who was then at work upon the floor of the scaffold. It does not appear whether this person was a skilled scaffold builder or not. It does appear, however, that the scaffold was completed shortly after the men were taken away from the work, and the bricklayers were set to work upon it the next morning. No braces were put upon the upright, but it was permitted to remain in the condition in which it was left at the time the superintendent took the two men from the work. The plaintiff insists that this case is not within the rule laid down in the case of *McCone* v. *Gallagher*. In that case the scaffold was used by carpenters who were at work upon the inside of a building. It was the duty of the carpenters to erect the necessary scaffolding, and the defendant, who was the contractor, had supplied a sufficiency of proper material to be used for that purpose. The material selected by the carpenters, however, was not proper, and

the scaffold was on that account defective. The defendant, how-
ever, took no part in the construction of it, and exercised no control
over it, but the carpenters constructed it as they saw fit, using what-
ever material they chose to select. The plaintiff there, who was a
carpenter, but who had taken no part in the construction of the
scaffold, went upon it and was injured by its fall while he was
engaged in his work. The court applied the rule laid down in the
case of *Butler* v. *Townsend*, and held that the scaffold was a mere
appliance of the work, and not a place upon which the work was to
be done; that the building of it was only a detail of the work to be
performed by the men who were engaged in it, and that if the
master furnished sufficient proper material to be used in the con-
struction of the scaffold, he was not liable for negligence to one
who was hurt by reason of its defect, although the person build-
ing the scaffold had erred in his selection of material to be used
for that purpose. But in that case it was said that, to estab-
lish a cause of action for such an injury, the plaintiff must prove,
in addition to the fact that there was negligence in the selec-
tion of the materials for the building of the scaffold, the addi-
tional fact that the master, or some one standing in the rela-
tion of representative of the master, assumed to construct the
scaffold, and then directed the employees to use it as a con-
structed scaffold. In this case the jury might have found
from the evidence, that Montague, the superintendent, who stood
in the relation of master towards Stewart, had taken charge of the
construction of the scaffold so far that he called the men who were
engaged upon it away from it before it was properly completed,
and this caused it to be left in an unsafe condition, and because of
his act the scaffold was not properly completed. They might also
have found upon the evidence that there was not sufficient material
furnished to the men at work upon the scaffold to properly brace it.
Because of those two facts the case is not, as we think, within the
case of *McCone* v. *Gallagher*, but is within the exception stated in
that case, and there was sufficient in the evidence to warrant the
jury in finding that the defendant was guilty of negligence.

The case of *McCone* v. *Gallagher* was decided in April, 1897.
The accident which is the subject of this litigation occurred on the
23d of November, 1897. On the thirteenth of May in that year

the Legislature passed the Labor Law, so called, which is chapter 415 of the Laws of 1897. That law took effect on the first day of June. At the time that law was passed, the rule laid down in *Butler* v. *Townsend* (126 N. Y. 105) was thoroughly settled as the law of this State, fixing the liability of a master towards his employees in the construction of scaffolding upon which it was necessary for the employees to stand to do their work. That rule was, that a scaffold erected for workmen is not a place in which their work is to be done within the meaning of the rule requiring the master to furnish a suitable place in which to do his work, but it is an appliance or instrumentality by means of which the work is to be done, and that if the master furnished proper material with which to build the scaffold he was not liable for the negligent act of one of his employees in building it; but that if any employee at work upon it received an injury because of the defect in it, it was the negligence of a fellow-servant for which the master was not liable. That rule had been laid down by the Court of Appeals, upon careful consideration, in the face of vigorous dissent, but had been adopted by the court and followed by the other courts of the State. That being the condition of the law as laid down by the courts, the Legislature, in the Labor Law, enacted that any person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected, for the performance of such labor, scaffolding, hoists, stays, ladders, or other mechanical contrivances, which are unsafe, unsuitable or improper, or which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged. (Laws of 1897, chap. 415, § 18.) This statute has changed the rule as laid down by the Court of Appeals. By it the Legislature has put upon the master the duty of furnishing a safe and proper scaffolding on which the employee is to do his work. The making of the scaffold is no longer a detail of the work, the responsibility for which is imposed upon the servant, but the scaffold is regarded as a place furnished by the master upon which the servant is to work, and the master is forbidden to permit that place to be unsafe, unsuitable or improper, but is bound so to construct it as to give proper protection to the life and limb of the

. FIRST DEPARTMENT, NOVEMBER TERM, 1898. '            [Vol. 34..

person who is engaged upon it. The duty, therefore, has become the personal duty of the master as distinguished from the duty of the servant, and the rule which charged the neglect to perform the duty upon the servant, so that another servant having been injured by it could not recover from the master, has been abolished. The rule which now exists with regard to the building of scaffolds is that it is a personal duty of the master to use reasonable care to see that the scaffold furnished is not unsafe, but is safe and proper for the use for which it is intended. Where the master has a personal duty in that regard, he is personally liable for its fulfillment. It is not enough that he selects a person of approved skill and fitness and furnishes to him the material with which to do the work, and that act alone will not relieve him from his responsibility. The person doing the work stands in the place of the master (*Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549 ; *Crispin* v. *Babbitt*, 81 id. 516; *Corcoran* v. *Holbrook*, 59 id. 517), and if he is negligent, his negligence is the personal act of the master for which the master must answer. The rule laid down by the statute should have been applied in this case, and if it had been, there can be no doubt that, upon the evidence as it stood, the defendant was guilty of negligence ; because there was practically no dispute that the scaffold as built was not sufficient for the burden that was put upon it, and that it gave way because of the failure to brace the upright as ordinary care and prudence required.

It is said, however, that the manner of the erection of the scaffold was easily seen and that the plaintiff's intestate was guilty of contributory negligence in consenting to use it when it was not sufficiently braced. But it clearly cannot be said as a matter of law that Stewart was guilty of contributory negligence in that regard. There was nothing to show that he had any knowledge of, or means of knowing, the manner in which this particular upright was secured. The upright was below the place where he was at work, and it was very clear that, standing there, he was unable to see it, and there is nothing to show that his attention was called to it or that he had either reason or opportunity to observe it. He was not called upon to inspect the scaffold to ascertain whether it was safe, but he had a right to assume that the master had performed his duty in that regard. He was, therefore, clearly not guilty of contributory neg-

ligence as a matter of law, and indeed the jury would not have been justified in finding that he was guilty of contributory negligence by reason of any facts which are made to appear in the case. The place where he was at work was between the sixth and seventh floors. The floors below were to have been arched between the beams and filled in with brickwork. They were not filled in above the first floor, but from the place where the men were at work, down to the first floor, the building was entirely open, and when Stewart fell he fell through five floors, and struck upon the first floor above the basement. Section 20 of the Labor Law requires that all contractors when constructing buildings in cities where the plans and specifications require the floor to be arched between the beams, or where the floors or filling in between the floors are of fire-proof material of* brickwork, shall complete the flooring or filling in as the building progresses to not less than within three tiers of beams below that on which the iron work is being erected. (Laws of 1897, chap. 415, § 20.). As it appears in this case that this statute had not been complied with, and the floors had not been filled in to within three tiers of beams, it is insisted by the plaintiff that that violation of the statute of itself constitutes negligence by reason of which the defendant was liable for this accident. The violation of a statute or of a municipal ordinance which causes an injury to any person, is *prima facie* evidence of negligence on the part of the law breaker which affords sufficient reason for charging him with liability for the accident. (S. & R. Neg. § 467.)

But that only takes place where the violation of the law can be said to have been in some way or to some extent the cause of the injury. The mere fact that a person has violated a law is not sufficient to charge him with liability for an accident unless the violation of the statute has something to do with the occurrence of the accident. It is quite true that in this case the law was violated and that Stewart was killed, but the killing of Stewart resulted purely from the breaking of the scaffold. The failure to fill in the floors under the place where he was at work had nothing whatever to do with the thing that caused his death. The fact that the floors were open was a condition which existed at the time and place where the

---

* *Sic.*

accident occurred, but there is nothing from which the jury would have been justified in finding that the accident would not have occurred had the floors been closed for two tiers higher up than they were, or that he would have received any less injury in that case. For that reason the failure to obey that portion of the law is not sufficient to charge the defendant with negligence. But if it were, the fact that the floors had not been filled in as the law required was perfectly apparent to Stewart as to everybody else, and if he consented to go to work upon the scaffold above the place where these openings were, knowing, as he must, that the openings existed, it was clear that he took the risk himself; and if leaving the openings was negligence which would charge the defendant, going to work above them with knowledge that they existed was equally contributory negligence on the part of Stewart which would prevent his recovery.

But for the reasons given above we are of the opinion that the judge erred in dismissing the complaint and that this judgment should be reversed, and that there should be a new trial, with costs to the appellant to abide the event.

BARRETT, PATTERSON and O'BRIEN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.