(62 App. Div. 497.)

### GUNNING SYSTEM v. CITY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. June 19, 1901.)

1. NUISANCE—BILLBOARDS—SUMMARY ABATEMENT—CITY ORDINANCE.

It was error to refuse to continue, pending the hearing of the case, an injunction restraining the destruction of a billboard by the fire commissioners, under Buffalo City Ordinance, c. 7, § 48, prohibiting the erection of any fence or billboard of more than a specified size, and authorizing any officer of the fire department to abate as a common nuisance any billboard erected contrary to the ordinance; the structure not becoming a nuisance simply by legislative declaration.

2. SAME—IMPROPER USE OF STRUCTURE NO GROUND FOR DESTRUCTION.

That a billboard may become a place of resort for lewd characters, and a place where rubbish may be deposited, does not constitute grounds for the destruction of the same as a nuisance.

Appeal from special term, Erie county.

Action by the Gunning System against the city of Buffalo and others to restrain the destruction of advertising boards. From an order of the special term denying plaintiff's motion to continue an injunction during the pendency of the action, the plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Tracy C. Becker, for appellant.
William H. Cuddeback, for respondents.

RUMSEY, J. The plaintiff is a foreign corporation, which has obtained the right to do business in this state, and is engaged in the business of sign advertising. The defendants are the city of Buffalo and the fire commissioners of that city. It appears from the complaint, and the facts are not denied, that on the 2d of April, 1901, the plaintiff made a contract with one Bailey, by which it obtained the privilege of building upon his land in the city of Buffalo an advertising sign, and that it did erect a sign 12 feet in height and 50 feet in length, placing it wholly and entirely upon Bailey's land, so that no part of it encroached upon the street or sidewalk, or in any way interfered with the rights of the public. By section 48 of chapter 4 of the Ordinances of the City of Buffalo it has been enacted that "no person shall hereafter erect any fence or billboard more than seven feet in height within the city of Buffalo, without permission of the common council; and any fence or billboard erected contrary to the provisions thereof shall be abated as a common nuisance by any officer of the fire department after two days' notice to remove same." The defendant fire commissioners gave the two-days notice to remove this billboard, and the plaintiff declined to do it. The defendants

now propose to tear it down. It appears that the plaintiff has erect-
ed numerous other advertising boards upon other pieces of property
in the city of Buffalo, each one of them more than seven feet in
height, but none of them encroaching upon a street; and it further
appears by an affidavit filed subsequently to the argument, but which
seems to have been considered by the learned justice at the special
term, that one of these boards has been torn down under the author-
ity of this ordinance. When the action was begun the plaintiff pro-
cured an injunction restraining the defendants from tearing down
any of these structures, with an order to show cause why that injunc-
tion should not be continued. Upon the return day of that order to
show cause, the learned justice at the special term declined to con-
tinue the injunction, and from his order thus made this appeal is
taken.

We have not found it necessary to examine whether the common
council of the city of Buffalo had the power to pass the ordinance
in question, nor whether structures like these are included within the
prohibition of the ordinance. Those matters we leave to be deter-
mined in the trial court when the case comes on to be considered by
it, without expressing an opinion upon either one of them. We shall
only consider the question whether, upon the papers presented to us,
there is made a case which will justify the fire commissioners in de-
stroying these structures as common nuisances, according to the pro-
visions of the ordinance. It hardly needs the citation of authorities
to establish the propositon that a thing does not become a nuisance
simply because it is declared to be such by the legislature or by the
common council of any municipality. Whenever it is alleged that
any structure is a nuisance, and the right is claimed to abate it sum-
marily, the owner is entitled to his day in court upon that question;
and if a public official or any one else proceeds to take summary meas-
ures to abate a nuisance he does so at the peril of being liable in dam-
ages if he fails to establish his contention when the owner shall call
him to account for the destruction of his property. Delaware, L. &
W. R. Co. v. City of Buffalo, 4 App. Div. 562–568, 38 N. Y. Supp. 510.
A person complaining of a nuisance may proceed by indictment, or
in some cases by an action to require the nuisance to be abated, but
if he does not see fit to invoke the interposition of the courts, and
elects to proceed summarily by virtue of any statute or an ordinance,
the owner is at liberty to apply to the courts to have his rights es-
tablished. People v. Board of Health of City of Yonkers, 140 N. Y.
1, 35 N. E. 320, 23 L. R. A. 481. Neither a statute nor an ordinance
is a conclusive adjudication that the structure prohibited is a nui-
sance, so as to authorize its destruction, and take away from the
owner the right to have the judgment of the court upon that question.
Until the action shall be finally decided, it is proper that the rights
of the owner should be protected, and that his structure should be
permitted to stand, unless it shall be made to appear that its con-
tinued existence or use is such that it is dangerous to the health or
destructive of the comfort of the community, and requires the im-
mediate action of the authorities for the protection of the citizens.
Nothing of that kind appears in this case. Upon the papers which

have been presented to us there is nothing to show that the structures, or any of them, are either so built or so situated, or so used, that they are likely to be dangerous to the community or inconvenient to the citizens. The worst that is said of the structures themselves is that they are not agreeable to look at, but, clearly, that affords no reason for their summary abatement as a nuisance.

It is said by the learned corporation counsel in his affidavit that these high structures erected upon vacant lots "will be a place of resort for lewd and vicious characters, a place where nuisances are committed, and also a place of deposit for rubbish and all kinds of filth and refuse, whereby the peace and safety, as well as the health, of the public will be endangered." Conceding, for the purposes of the argument, that the prophecy of the affiant will come true, there is no suggestion upon the record that such things have happened, and there is no reason to suppose that if such things do happen the nuisance, if it is one, cannot be abated in some other way than by the destruction of the signboards. When any building or structure becomes a nuisance, not because of its inherent qualities, but because of the use to which it is put or the manner of that use, it is not to be destroyed to abate the nuisance, unless such destruction is absolutely necessary. If the nuisance can be abated by regulating the use, that is all that is to be permitted to be done. Wood, Nuis. § 740; Health Department v. Dassori, 21 App. Div. 348, 47 N. Y. Supp. 641. So, even if the consequences apprehended by the defendants from the existence of these structures should ensue, it would not then be necessary to destroy them for the purpose of preventing that use.

For these reasons it seems to us proper that during the pendency of this action, and until these grave questions shall be decided, the plaintiff should be entitled to maintain these structures, and the defendants should be restrained from attempting to destroy them under the authority of this alleged ordinance. The order appealed from must therefore be reversed, with $10 costs and disbursements, and the injunction continued, with $10 costs. All concur.